## GAYLOR v. MONROE. (No. 6608.)

(Court of Civil Appeals of Texas. Austin. May 30, 1923. On Motion for Rehearing, Dec. 5, 1923. On Second Motion for Rehearing, Jan. 16, 1924. Writ of Error Granted March 26, 1924.)

**1. Landlord and tenant ⇐245—No lien for supplies unless tenant knew supplies were furnished by landlord.**

Under a landlord's lien statute, giving lien for supplies, etc., furnished by the landlord to enable the tenant to raise his crops, donations furnished through a third person and charged to the landlord's account do not establish the lien, where the tenant does not know that the landlord is to pay for them, since the statute contemplates a contract or agreement between landlord and tenant.

**2. Trial ⇐365(2)—Erroneous answer to interrogatory may be interpreted in the light of answers to other interrogatories.**

Where the answer to one special interrogatory is inconsistent with a second one, and an erroneous instruction doubtless influenced the first, the second will be considered in explaining the first.

**3. Trial ⇐253(5)—Instruction in landlord lien foreclosure suit, omitting necessary element of contract relation, held erroneous.**

In a landlord's lien foreclosure suit, an instruction that if a third party let the tenant have the goods, at request and on his credit, then the landlord furnished them, *held* erroneous as authorizing a finding for landlord *without reference to any contract.*

**4. Trial ⇐337—Jury must follow erroneous instructions.**

It is the duty of the jury to accept the charge whether right or wrong as the correct statement of the law.

### On Motion for Rehearing.

**5. Appeal and error ⇐930(3)—Neither party having objected to form of special issues, court must uphold jury findings if reasonable.**

Where special issue verdict is rendered, neither party having objected to the form of issues submitted, the appellate court's construction of the findings must uphold them, if reasonable.

Appeal from District Court, Milam County; John Watson, Judge.

Suit by D. Monroe against Jim Gaylor commenced in justice court. From a judgment of the district court for plaintiff, defendant appeals. Reversed and remanded, with instructions on rehearing.

M. G. Cox, of Cameron, for appellant.

Chambers, Wallace & Gillis, of Cameron, for appellee.

KEY, C. J. This is the second time that this case has been before this court. On the former appeal it was reversed, because the trial court refused to submit a certain issue to the jury. See Gaylor v. Monroe, 221 S. W. 330. That appeal was prosecuted without a supersedeas bond, and pending the appeal the property which had been distrained was sold by order of the court, and the proceeds of the sale were paid to the clerk of the court, who used the same to pay the costs of suit, and paid to the plaintiff Monroe $1,053.70, which left in the hands of the clerk a balance of $137.23.

The litigation grew out of a lease contract. The controlling questions in the case were whether the plaintiff, Monroe, who was the landlord, was entitled to a judgment for, and had a statutory lien for, supplies furnished to his tenant, the defendant, Gaylor.

At the last trial, the case was submitted to a jury upon special issues, which, with the answers of the jury, are as follows:

"Special issue No. 1. Did Monroe alone furnish to Jim Gaylor wares and merchandise described in the account sued upon? Answer 'Yes' or 'No.'" Answer: "Yes."

"To govern you in arriving at your answer to special issue No. 1, you are instructed as follows: That if you find from the evidence that Middleton & Co. let Jim Gaylor have the goods, wares, and merchandise at the request of D. Monroe and solely upon the credit of D. Monroe, then and in such event he (D. Monroe), in contemplation of the law, furnished the same to Jim Gaylor. If, on the other hand, you should find from the evidence that D. Monroe 'guaranteed' or 'stood good for' the goods, wares, and merchandise, though they may have been delivered by Middleton & Co. solely and only by reason of his doing so, then such goods, wares, and merchandise were not in contemplation of the law delivered solely and only upon the credit of D. Monroe and would not under such circumstances have been furnished by D. Monroe.

"If you have answered 'No' to the foregoing special issue No. 1, then you need not answer the following, but if you have answered 'Yes,' then you will answer the following:

"Special issue No. 2. (a) Did D. Monroe furnish Jim Gaylor the goods, wares, and merchandise described in the account sued on through Middleton & Co. or not? Answer 'Yes' or 'No.' (b) If so, did Gaylor then know Monroe was doing so? Answer 'Yes' or 'No.'" Answer: "(a) Yes." "(b) No."

"Special issue No. 3. Were the goods, wares, and merchandise so sold and delivered to Jim Gaylor solely and only upon the credit of D. Monroe or upon the joint credit of D. Monroe and Jim Gaylor or upon the credit of Jim Gaylor alone?" Answer: "Sold to Jim Gaylor upon the credit of D. Monroe."

"Special issue No. 4. Were the items of goods, wares, and merchandise described in the account sued on herein necessary or not necessary to enable Jim Gaylor to make a crop on land of D. Monroe in the year 1918, or to gather, secure, house, or put said crop in condition for market? Answer 'Yes' or 'No.'" Answer: "Yes."

"Our statute provides that all persons leas-

ing or renting lands shall have a preference lien upon the property of the tenant upon such premises for any rent that may become due and for all money and the value of all animals, tools, provisions, and supplies furnished by the landlord to the tenant to enable the tenant to make a crop on said premises and to gather, secure, house, and put the same in condition for market; the money, animals, tools, provisions, and supplies so. furnished being necessary for that purpose.

"Special issue No. 5. (a) Were any goods delivered by Middleton & Co. to Gaylor's hired hand? Answer 'Yes' or 'No.' (b) If so, what amount and value were so furnished, if any? (c) State to whom said goods were so charged and why? (d) Was there any separate agreement or not between Middleton and Gaylor as to whom such goods should be charged? (e) If so, what was that agreement?" Answer: "(a) Yes." "(b) $246.95." "(c) To the Gaylor account by Will Adam by request of Jim Gaylor." "(d) None." "(e) There was none."

"Special issue No. 6. Was the labor of Jim Gaylor's hired hand, employed by him in cultivating and harvesting the crop upon the land rented to Gaylor by D. Monroe, necessary? Answer 'Yes' or 'No.'" Answer: "Yes."

"Special issue No. 7. Did Jim Gaylor direct Middleton & Co. to let his hired hand have the goods shown in the evidence to have been gotten by the hired hand in payment of his wages due by Jim Gaylor to said hired hand? Answer 'Yes' or 'No.'" Answer: "Yes."

Upon the verdict as returned, the trial court rendered judgment in favor, of the plaintiff for $424.77 as rent, and $583.94 as the amount of supplies furnished defendant by plaintiff, aggregating $1,008.71, and deducted therefrom $78.75, found by the jury to be due the defendant for work. It was also decreed that the plaintiff, Monroe, had a valid and subsisting unsatisfied landlord's lien upon all the cotton and cotton seed distrained to secure the judgment, which lien was ordered to be foreclosed; and the defendant was ordered to pay into the registry of the court $55.63 paid to him under the former judgment as proceeds of the sale of cotton, etc., in excess of the amount of recovery allowed by this judgment, and, adjudged to pay all the costs, except the costs of the former appeal; and defendant has prosecuted this appeal.

## Opinion.

We adopt as substantially correct the following proposition of law submitted by appellant:

"Where landlord sues tenant upon open account for goods delivered to his tenant by a third party, and does not plead facts raising the issue of ratification or acquiescence; and where the jury, in answer to special issues, finds the tenant did not know when goods were gotten that the landlord was furnishing them, it is fundamental error, manifest of record, for the court to render judgment in favor of landlord against tenant for amount of the open account, and foreclose landlord's lien therefor."

The statute (Vernon's Ann. Civ. St. Supp. 1918, art. 5475) under which appellee claims his landlord's lien gives a preference lien for rents and for all money, and the value of all animals, tools, provisions and supplies furnished by the landlord to the tenant to enable the tenant to make a crop on such premises, and to gather, secure, house, and put the same in condition for market; the money, animals, tools, provisions, and supplies so furnished being necessary for that purpose, whether the same is to be paid in money, agricultural products, or other property; and this lien shall apply only to animals, tools, and other property furnished by the landlord to the tenant, and to the crop raised on said rented premises.

[1] We think it is clear that this statute contemplates a contract or agreement between landlord and tenant, by which the former is to furnish to the latter one or more of the things referred to in the statute, and the latter becomes obligated to pay the former therefor. In other words, if a landlord chooses to do so, he may donate to his tenant any of the things referred to in the statute, and he may make such donation by directing a third person to furnish the same, and charge them to his account, and if such third person delivers such article to the tenant, who has no knowledge of the fact that the landlord and not the tenant is to pay for the same, then, and in such circumstances, there is no promise or obligation upon the part of the tenant to pay the landlord for the goods referred to; and therefore no statutory lien exists in favor of the landlord.

[2, 3] It is contended by counsel for appellee that the answer of the jury to special issue No. 1 shows that the plaintiff alone furnished the defendant, Gaylor, the wares and merchandise described in the account sued for, but, in construing that answer, we are of the opinion that the answer which the jury made to the second special issue, to the effect that Gaylor did not know that Monroe was furnishing the articles referred to should also be considered. The trial court instructed the jury concerning the first special issue submitted that, if the testimony showed that Middleton & Co. let the defendant Gaylor have the goods, wares, and merchandise at the request of the plaintiff Monroe, and solely upon his credit, then, and in such event, in contemplation of law, he (Monroe) furnished the same to the defendant, Gaylor. That charge was fundamentally erroneous, because it authorized the jury to find that the landlord had furnished to the tenant, the articles referred to under the circumstances stated therein, without reference to any contract or agreement between the landlord and the tenant.

[4] But it was the duty of the jury to accept that charge as the correct statement of the law, and doubtless that accounts for the

answer they made to the first special issue; although, in reply to the second special issue, they found that the defendant Gaylor was not aware of the fact that the supplies referred to were furnished by his landlord Monroe. Therefore, when the jury found, in reply to subdivision "b" of the second special issue, that the tenant, when he obtained the goods, wares and merchandise referred to from Middleton & Co., did not know that his landlord was furnishing the same, that finding negatived the fact that there was any agreement or understanding between the landlord and the tenant that the former was to furnish the articles referred to. In answering the first special issue as they did, the jury were doubtless misled by the erroneous charge of the court concerning what would constitute furnishing goods, wares, and merchandise by the landlord.

Hence, we conclude that, on account of the fundamental error referred to and of the answer which the jury made to the second special issue negativing the existence of one of the essential facts constituting the landlord's lien, the judgment of the trial court should be reversed, and the cause remanded, which has accordingly been done.

Reversed and remanded.

### On Motion for Rehearing.

McCLENDON, C. J. Both parties have moved for rehearing. Appellee contends that, conceding as correct the view of the law announced in the original opinion, nevertheless, when the verdict is properly construed, the judgment should be affirmed. Appellant, on the other hand, urges that, under the findings of the jury, the judgment should be reformed and rendered. •

[5] A careful study of the verdict leads, we think, to the conclusion that the position of appellant is correct. Neither party objected to the form in which the issues were submitted, and it becomes the duty of the court to construe the findings with the view of upholding them, if this can reasonably be done. The following quotation from Bank v. Rush (Tex. Com. App.) 246 S. W. 353, states generally the rules applicable to a proper construction of a special issue verdict:

"All the issues must be considered together as a whole. If, when construed as a whole, they admit of more than one reasonable construction, the trial court has power to apply that reasonable construction which he deems proper. Elder-Dempster Co. v. Weld Neville Co. (Tex. Com. App.) 231 S. W. 102. If they are conflicting and one finding destroys another, then the verdict will not support a judgment upon either finding, and it must be set aside. But if, taking all the findings together, and applying them to the contested issues in the case, they fairly dispose of those issues, and are not ambiguous or conflicting, then the duty rests upon the court to enter judgment in accordance with all pertinent findings."

The finding under special issue No. 1 is to the effect that Monroe alone furnished the merchandise to Gaylor. This finding, standing alone and unqualified, would entitle appellee to recover, because it embraced every essential affecting appellant's liability in so far as the merchandise was concerned. The finding under special issue 2(b), however, is that Gaylor did not know that Monroe was furnishing the merchandise. If this be true, then there was in fact no furnishing of the merchandise as between Monroe and Gaylor, within the meaning of the statute. The two findings, unexplained, are therefore inconsistent, and the verdict conflicting. It is apparent, however, that "furnished" is not used in these issues in the full sense employed in the statute; but is limited by the direction given by the court to the jury as a guide in answering special issue No. 1, under which direction the only question presented for determination by that issue is whether Monroe, in his dealings with Middleton & Co., was primarily liable for the merchandise, or liable only as surety or guarantor. If the former, then the jury were instructed to answer the issue "Yes," if the latter, "No." Under the statute, as construed in the original opinion, knowledge by Gaylor that Monroe was doing so was essential to a finding that Monroe furnished the merchandise. The jury could not find a "furnishing" in this sense and at the same time find a want of such knowledge. Taking the verdict as a whole, however, and construing special issues numbered 1, 2(a), and 2(b) in the light of the court's direction regarding special issue No. 1, we think all substantial difficulty is removed, and it must be held that the effect of the three findings is that Middleton & Co. sold the merchandise to Gaylor upon the individual credit of Monroe alone, and that Gaylor was ignorant of the fact of Monroe's participation in the matter.

Monroe is entitled to judgment for his rent amounting to $424.77, less Gaylor's counterclaim of $78.75, and to a foreclosure of his landlord's lien upon the distrained property or its proceeds. As to the other items he should take nothing by his suit.

The judgment of the trial court is reversed, and the cause remanded, with instructions to that court to render judgment accordingly and to make such other orders or decrees with reference to the proceeds of the distrained property as may be necessary to carry out such judgment.

Reversed, and remanded with instructions.

### Second Motion for Rehearing.

Appellee, in a second motion for rehearing, contends that he is entitled, in any event, to personal judgment against appellant for the amount for which judgment was

rendered by the trial court upon the account in suit, directing our attention to the fact that his pleadings support such judgment.

We have carefully examined the pleadings in the case, and have reached the conclusion that they sufficiently allege that the items in the account were sold by Middleton & Co. to appellant, under an arrangement between Middleton & Co. and appellee, although by the jury finding this was unknown to appellant, by which appellee was, as between him and Middleton & Co., the real owner of this account. There is no statement of facts in the record on appeal, and, as no question of personal liability was submitted to the jury, the judgment of the trial court in this respect is not in issue.

The other questions presented in the motion for rehearing have all had our careful consideration, and the motion, otherwise than as herein granted, is overruled.

It is accordingly ordered that the motion for personal judgment in favor of appellee against appellant upon the items of the account allowed in the trial court's judgment be granted; that the order passed by this court on December 5, 1923, be set aside; that the judgment of the trial court be reversed and the cause remanded to that court, with instructions to enter judgment and dispose of the fund derived from the sale of the distrained property, as follows: That appellee recover judgment against appellant for his rents amounting to $424.77, less appellant's counterclaim of $78.75, with foreclosure of appellee's landlord's lien upon the distrained property or its proceeds, that the trial court make such other orders or decrees with reference to the proceeds of the distrained property as may be necessary to carry out such judgment, and that, in addition thereto, appellee recover a personal judgment only against appellant for the sum of $583.94.

Granted in part, and in part overruled.